UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| Lawrence Biletski | } | BK Case No. 15-81967-CRJ-7 |
| SSN: XXX-XX-4973 | } | |
| Debtor(s) | } | Chapter 7 |
| Bill Bowman | } | |
| Plaintiff(s) | } | |
| vs. | } | AP Case No. 15-80078-CRJ |
| Lawrence Biletski | } | |
| Defendant(s) | } | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND ON SHOW CAUSE WHY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD NOT BE DENIED FOR FAILURE TO TIMELY FILE THE MOTION**

The Court having received and considered (a) the Plaintiff's Motion for Summary Judgment, Memorandum of Points and Authority in Support of Plaintiff's Motion for Summary Judgment with Exhibits, and Proposed Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Summary Judgment; and (b) the Debtor/Defendant's Motion for Summary Judgment with Exhibits, finds that the Plaintiff's Motion for Summary Judgment should be denied; that the Defendant's Motion for Summary Judgment should be granted in part as to the Plaintiff's claims under 11 U.S.C. § 523 and 11 U.S.C. § 727(a)(4); and that the Defendant's Motion for Summary Judgment should be denied as to 11 U.S.C. § 727(a)(5).

The findings and conclusions set forth herein constitute the Court's Findings of Fact and Conclusions of Law pursuant to FED. R. BANKR. P. 7052. To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such. Further, to the extent

any of the Conclusions of Law set forth below constitute Findings of Fact, they are adopted as such.

## FINDINGS OF FACT

1. Prior to filing this case, the Defendant sought relief under Chapter 7 of Title 11, United States Code, in the United States Bankruptcy Court for the Central District of California, case number 2:05-bk-21639-RN (the "California Bankruptcy Case").

2. In the California Bankruptcy Case, the Court found that: (a) the Plaintiff herein is the "Assignee of Record" of an Ex Parte Judgment and a Default Judgment (the "Assigned Judgments") against the Defendant; and (b) the Assigned Judgments were not listed or scheduled as claims in the California Bankruptcy Case, and therefore those debts were excepted from the Order of Discharge pursuant to 11 U.S.C. § 523(a)(3).

3. Since 2012 when the Plaintiff purchased the Assigned Judgments, he has vigorously pursued collection of the debts from the Defendant, and the Defendant has retained counsel to defend him in numerous proceedings in two states.

4. On July 23, 2015, the Defendant filed the present Chapter 7 case in the Northern District of Alabama, Northern Division. On Schedule D - Creditors Holding Secured Claims, the Defendant scheduled the Plaintiff as a secured creditor and listed the Assigned Judgments in the amounts of $59,993 and $97,786.

5. On September 30, 2015, the Plaintiff filed the above-styled Complaint in which he asserted three claims: (1) that the Assigned Judgments are nondischargeable in this case based on the finding of nondischargeability in the California Bankruptcy Case; (2) the Defendant's discharge should be denied under 11 U.S.C. § 727(a)(4)(A) for false oaths; and (3) the Defendant's discharge should be denied under 11 U.S.C. § 727(a)(5) for the unexplained loss of assets.

6. Prepetition, the Plaintiff filed an action in the Circuit Court of Madison County, Alabama against the Defendant alleging the Defendant transferred his ownership interest in his Alabama residence and an adjacent 800 square foot lot to his wife with intent to defraud the Plaintiff in violation of the Alabama Uniform Fraudulent Transfer Act, ALA. CODE 1975 § 8-9A-1 (the "AUFTA Case"). The Defendant transferred his one-half

interest in the residence to his wife in May of 2013 in exchange for $7,500 more than two years before filing the present case. In the Defendant's Amended Statement of Financial Affairs filed on November 30, 2015, the Defendant listed the additional transfer on February 14, 2014 of an "800 square foot strip of lot adjacent to residence to wife based on builder's mistake." ECF 43.

7. The Plaintiff alleges that in giving responses to interrogatories in the AUFTA Case, the Defendant stated that as of April 10, 2015 his retirement funds had "decreased to $41,500." The Plaintiff alleges the Defendant has failed to explain the loss of the retirement assets disclosed in response to the interrogatories in the AUFTA Case because the Defendant did not list any retirement assets on Schedule B – Personal Property when he filed this case on July 23, 2015.

8. In connection with discovery in the AUFTA Case, the Plaintiff proposed the following Interrogatory No. 5, "Other than employment, list the sources and amounts of all income you have received from any source, from January 1, 2012, to present, on a month-to-month basis." The Defendant responded:

Boeing Pension cash out: $25,350.00

BCF 401K cash out: $16,190.00

9. In support of his Motion for Summary Judgment, the Defendant filed an Affidavit in which he admits that he cashed out his 401(k) when his contract ended with BFC Solutions in October of 2014 and then cashed out his pension with Boeing in December of 2014. The Defendant avers that he cashed out the accounts to "help pay for the substantial attorneys' fees" he incurred in responding to the numerous pleadings filed by the Plaintiff.

10. On November 30, 2015, the Defendant filed Amended Schedules in this case. On Amended Schedule F – Creditors Holding Unsecured Nonpriority Claim, the Defendant listed two California attorneys as unsecured creditors: (1) Darren Gordon Smith in the amount of $28,000; and (2) David A. Tilem in the amount of $52,000. On his Amended Statement of Financial Affairs, the Defendant disclosed that within the 90 days immediately preceding the petition date, on May 5, 2015, he made a payment in the amount of $2,000 to David A. Tilem. The Defendant has not submitted any additional

evidence of documentation to support his allegation that he used his retirement funds to pay legal fees.

11. Finally, the Plaintiff asserts the Defendant made various false oaths in connection with the California Bankruptcy case and the AUFTA Case. The Plaintiff does not assert any allegations of false oath made by the Defendant in this bankruptcy case.

## PROCEDURAL HISTORY

1. On November 25, 2015, this Court entered a Scheduling and Trial Order requiring the parties to file Motions for Summary Judgment with supporting affidavits on or before Thursday, February 25, 2016.

2. Five days after the deadline expired, on Tuesday, March 1, 2016, the Plaintiff filed his Motion for Summary Judgment, Memorandum of Points and Authority in Support of Plaintiff's Motion for Summary Judgment with Exhibits, and Proposed Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Summary Judgment.

3. On March 2, 2016, the Court entered an Order to Show Cause Why Plaintiff's Motion for Summary Judgment Should not be Denied for Failure to Timely File the Motion, and directed the Plaintiff to appear telephonically on March 15, 2016 at 1:30 p.m., CDT, and show cause why the Motion should not be denied as being untimely.

4. On March 15, 2016, the Adversary Proceeding came before the Court for hearing on Telephonic Status Conference and the Order to Show Cause. The Plaintiff failed to appear for the hearing or file an Answer to the Order to Show Cause. Adam Dauro, Counsel for Defendant, appeared telephonically for the hearing. At the conclusion of the hearing, the Court took the Motions for Summary Judgment under advisement.

5. On March 15, 2016, the Court entered an Order Vacating Trial, and now issues this Order granting partial summary judgment in favor of the Defendant. By separate Order, the Court will reschedule the remaining issues under § 727(a)(5) for trial.

## STANDARD OF REVIEW

1. Pursuant to FED. R. CIV. P. 56 as made applicable to Adversary Proceedings pursuant to FED. BANKR. R. P. 9014 and 7056, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179 (11th Cir. 2002).

2. The moving party bears the initial burden of showing that there is no genuine issue of material fact to be decided at trial. Celotex Corp., 477 U.S. at 323. When the moving party has satisfied its burden, the non-moving party cannot rest upon the pleadings. Instead, the non-moving party must go beyond the pleadings and demonstrate by affidavit or other appropriate means that there is a genuine issue of material fact for trial. *Id.* at 324. In determining whether there is a genuine issue of material fact, the evidence and all factual inferences must be viewed by the Court in the light most favorable to the party opposing summary judgment, and all reasonable doubts about the facts must be resolved in favor of the non-moving party. Acevedo v. First Union Nat. Bank, 476 F.3d 861, 865 (11th Cir. 2007); Andreini & Co. v. Pony Express Delivery Servs., Inc. (In re Pony Express Delivery Servs., Inc.), 440 F.3d 1296, 1300 (11th Cir. 2006).

3. "Cross-motions for summary judgment 'must be considered separately,' and 'each movant bears the burden of establishing that no genuine issue of material fact exits and that it is entitled to judgment as a matter of law.'" Sibille v. Davis, 2016 WL 1178662 (M.D. Ala. 2016); Noreen Wiscovitch-Rentas v. Villa Blanca VB Plaza, LLC (In re PMC Marketing Corp.), 543 B.R. 345 (B.A.P. 1st Cir. 2016); Avocent Huntsville Corp.v. ClearCube Tech., Inc., 443 F.Supp.2d 1284, 1293 (N.D. Ala. 2006)("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard").

4. Although the Plaintiff did not timely file his Motion for Summary Judgment, failed to appear at the hearing on the Order to Show Cause Why Plaintiff's Motion for Summary Judgment Should not be Denied for Failure to Timely File the Motion, and further failed to respond to the Order to Show Cause, the Court will nevertheless consider and review each Motion on its own merits based on the numerous pleadings filed in this case and to finally resolve the litigation between these parties.

### CONCLUSIONS OF LAW

1. Chapter 7 debtors are "generally entitled to a discharge of all debts that arose prior to the filing of the bankruptcy petition." <u>Kane v. Stewart Tilghman Fox & Bianchi Pa (In re Kane)</u>, 2014 WL 2884603 *5 (11th Cir. 2014)(quoting <u>In re Mitchell</u>, 633 F.3d 1319, 1326 (11th Cir. 2011)). Thus, exceptions to discharge must be construed strictly "in order to give effect to the fresh start policy of the Bankruptcy Code." <u>Hoffend v. Villa (In re Villa)</u>, 261 F.3d 1148, 1153 (11th Cir. 2001). However, "this 'fresh start' policy is only available to the honest but unfortunate debtor." <u>In re Kane</u>, 2014 WL 2884603 *5 (quoting <u>In re Fretz</u>, 244 F.3d 1323, 1326 (11th Cir. 2001)).

2. The Plaintiff asserts that the Order excepting the Assigned Judgments from discharge in the California Bankruptcy Case operates as a complete bar to discharge of the Assigned Judgments in the present case. The Bankruptcy Appellate Panel in <u>Paine v. Griffin (In re Paine)</u>, 283 B.R. 33, 37 (B.A.P. 9th Cir. 2002) explained that a determination of nondischargeability in one bankruptcy case generally bars redetermination of that issue in a subsequent case. However, the Bankruptcy Appellate Panel further explained that this general rule of basic jurisprudence is limited by the statutory exceptions set forth in 11 U.S.C. § 523(b). The Bankruptcy Appellate Panel wrote:

> The rule is that res judicata principles apply in bankruptcy so that once a debt is 'excepted from discharge' in a judgment that meets the requirements for preclusion, it is, **except for the eight exceptions named in § 523(b)**, 'excepted from discharge' in all subsequent chapter 7 cases without need for an independent basis for excepting the debt from discharge in the latter case.

In re Paine, 283 B.R. at 37 (emphasis added).

3. Section 11 U.S.C. § 523(b) includes the following exceptions to the general rule barring the redetermination of dischargeability in subsequent cases:

> Notwithstanding subsection (a) of this section, **a debt that was excepted from discharge under** (a)(1), **(a)(3)**, or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439A of the Higher Education Act of 1965, or under 733(g) of the Public Health Service Act **in a prior case concerning the debtor under this title**, or under the Bankruptcy Act, **is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title**.

11 U.S.C. § 523(b) (emphasis added).

4. Pursuant to § 523(b), a debt which was excepted from discharge in a prior bankruptcy case under Title 11 for failure to be listed and being omitted from the bankruptcy schedules pursuant to 11 U.S.C. § 523(a)(3) "is dischargeable" in the new bankruptcy case, unless by the terms of § 523(a) the debt is nondischargeable in the new case.

5. Section 523(b) does not except from discharge a debt that was nondischargeable in a prior case under § 523(a)(3) based on a debtor's failure to schedule the debt in the prior case. A leading treatise on bankruptcy law provides:

> The reason that those kinds of debts were excepted from discharge has nothing to do with any act involving dishonest dealing with the creditors. There is no sound reason why a debtor should be forever barred from having the debt discharged. The debtor should be able to file another bankruptcy petition, properly and timely schedule the debt, and receive the full benefit of the discharge.

4 COLLIER ON BANKRUPTCY ¶ 523.28 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

6. Although the Plaintiff further suggests that one of the Assigned Judgments is nondischargeable because the underlying State Court Judgment was founded upon claims of breach of fiduciary duty and fraud, the Plaintiff merely purchased the judgments as debt and is not the party who asserted the claims of breach of fiduciary duty and fraud. In addition, the California Bankruptcy Court only excepted the Assigned Judgments from discharge pursuant to § 523(a)(3) based on the Defendant's failure to list or schedule the Assigned Judgments in time to permit the underlying judgment creditors to timely file a proof of claim. The California Bankruptcy Court did not make a finding of breach of fiduciary duty nor fraud in that case. See ECF 19,

Memorandum of Points and Authority in Support of Plaintiff's Motion for Summary Judgment, Exhibit 1.

7. Accordingly, the Court finds that the Assigned Judgments are not excepted from discharge in this case, as the Defendant properly and timely scheduled the Plaintiff as a secured creditor and the Assigned Judgments as debts in this case, unlike what occurred in the California Bankruptcy Court.

8. Alternatively, the Plaintiff argues that the Defendant's discharge should be denied under §§727(a)(4) and (a)(5). "To ensure that only the honest but unfortunate debtors receive the benefit of discharge, Congress enacted several exceptions to § 727(b)'s general rule of discharge." Kane v. Stewart Tilghman Fox & Bianchi Pa (In re Kane), 2014 WL 2884603 *5 (11th Cir. 2014)(quoting In re Fretz, 244 F.3d 1323, 1326 (11th Cir. 2001)).

9. "A party who objects to discharge has the burden to prove the objection by a preponderance of the evidence." Protos v. Silver (In re Protos), 322 Fed. Appx. 930, 933 (11th Cir. 2009). Once the objecting party satisfies the "initial burden by producing evidence establishing the basis for his objection, the burden shifts to the debtor to explain satisfactorily the loss." Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 619 (11th Cir. 1984).

10. The Plaintiff alleged in his Complaint that Defendant's discharge should be denied under § 727(a)(4)(A). Under § 727(a)(4)(A), "a discharge should not be granted if the debtor 'knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). If the objecting party presents credible evidence establishing each element under § 727(a)(4)(A), "the burden shifts to the debtor to convince the court not to deny discharge based on the objecting party's evidence." Phillips v. Epic Aviation (In re Phillips), 476 Fed.Appx. 813 *1 (11th Cir. 2012).

11. "Courts will not grant a discharge if the debtor knowingly and fraudulently, *in connection with the case*, made a false oath or account." Keefe v. Rudolph (In re Rudolph), 233 Fed. Appx. 885 *3 (11th Cir. 2007)(emphasis added); *See also* Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984)(explaining that "a discharge pursuant to 11 U.S.C. § 727(a)(4)(A) should not be granted where the

debtor knowingly and fraudulently made a false oath or account in connection with the bankruptcy proceeding"). "[T]he false oath must be made intentionally with regard to a matter material to the case." In re Rudolph, 233 Fed. Appx. at *3. "False oaths sufficient to justify the denial of discharge include (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings." Buckeye Retirement Co. v. Bishop (In re Bishop), 420 B.R. 841 (Bankr. N.D. Ala. 2009)(quoting Beaubouef v. Beaubouef (Matter of Beaubouef), 966 F.2d 174, 178 (5th Cir. 1992)).

12. Under the plain language of § 727(a)(4)(A), a Chapter 7 debtor's discharge should be denied only if the objecting party shows that the debtor made a false oath or account in connection with the current bankruptcy case. "A debtor's prepetition conduct, even if it caused harm to creditors, cannot give rise to a claim" under § 727(a)(4)(A) for false oaths because "the statute specifies that the false oaths must be made in or in connection with the debtor's bankruptcy case." Rockstone Capital, LLC v. Bub (In re Bub), 502 B.R. 345, 355 (Bankr. E.D.N.Y. 2013); *See also* Wagner v. Wagner (In re Wagner), 492 B.R. 43, 57 (Bankr. D. Colo. 2013)("§ 727(a)(4)(A) is not directed at prepetition activity, it is specifically directed toward activity that takes place 'in or in connection with' the bankruptcy case"); Area Community Credit Union v. Tyrrell (In re Tyrrell), 363 B.R. 581 (Bankr. D.N.D. 2005)(false statements made in a prepetition loan application were not made in connection with the bankruptcy case for purposes of § 727(a)(4)(A)).

13. In this case, the Plaintiff has not asserted any allegations of false oath made in or in connection with this bankruptcy case. Rather, each of the Plaintiff's allegations of false oath were made in connection with Declarations filed in the California Bankruptcy Case and the AUFTA Case. Accordingly, the Plaintiff has failed to present any evidence that the Defendant made a false oath in or in connection with the present Chapter 7 case. The Plaintiff further appears to have abandoned this argument as the Memorandum of Points and Authority in Support of Plaintiff's Motion for Summary Judgment only address the issue of nondischargeability under 11 U.S.C. § 523(a) and denial of discharge under 11 U.S.C. § 727(a)(5).

14. Finally, the Plaintiff asserts that the Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(5) based on the Defendant's alleged failure to provide an explanation of the loss of assets in the Defendant's retirement accounts and the Defendant's home. Pursuant to § 727(a)(5), a Court shall grant the debtor a discharge unless "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

15. To deny a discharge under § 727(a)(5), a creditor has the initial burden of showing that assets the debtor once had are no longer available for creditors. Hughes v. Wells (In re Wells), 426 B.R. 579, 606 (Bankr. N.D. Tex. 2006); Fiandola v. Moore (In e Moore), 619 Fed. Appx. 951, 954 (11th Cir. 2015)(explaining that a creditor has the burden under § 727(a)(5) to prove that the debtor "at one time owned the assets which are no longer available for creditors"). Once a creditor has introduced sufficient evidence "substantiating the disappearance of substantial assets of the debtor, 'the burden shifts to the [d]ebtor to explain satisfactorily the losses or deficiencies.'" In re Wells, 426 B.R. at 606.

16. Denial of discharge is not required under § 727(a)(5) simply when there is a loss or deficiency of assets. Instead, denial of discharge is required only when the debtor has failed to explain satisfactorily the loss or deficiency. Mungenast v. Darr (In e Darr), 472 B.R. 888, 900 (Bankr. E.D. Mo. 2012). "'The explanation given by the debtor must be definite enough to convince the trial judge that assets are not missing.'" Id. (quoting Allred v. Vilhauer (In re Vilhauer), 458 B.R. 511, 514-15 (8th Cir. BAP 2011)). "The explanation offered by the debtor of the disposition of assets need not be meritorious; rather, the explanation need only satisfactorily account for the disposition." In re Wells, 426 B.R. at 606.

17. "The question of whether a debtor satisfactorily explains a loss of assets is a question of fact." Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 619 (11th Cir. 1984); Protos v. Silver (In re Protos), 322 Fed. Appx. 930, 934 (11th Cir. 2009). "Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." In re Chalilk, 748 F.2d at 619.

18. The Plaintiff contends that the Defendant has failed to explain the transfer of his home and an adjoining lot to his wife. These transfers are the subject of the AUFTA

Case pending in Circuit Court. The Defendant admits that prior to May 2013, the Defendant and his wife owned a house located at 104 Leigh Springs, Harvest, Alabama. The home's driveway was constructed on a neighboring lot by error. This 800 foot square foot of land was transferred from the neighboring lot to the Defendant and his wife. In May of 2013, the Defendant transferred his one-half interest in the home to his wife in exchange for $7,500. In February of 2014, after the Defendant discovered that the May 2013 transfer did not include the driveway, the Defendant also transferred the driveway to his wife.

19. The Plaintiff filed the AUFTA Case against the Defendant and his wife to invalidate these transfers. On August 12, 2015, the Circuit Court entered summary judgment in favor of the Defendant's wife finding that the transfers were not fraudulent. Because the Defendant had filed this bankruptcy case on July 23, 2015, the Circuit Court stayed the action as to the Defendant's pending Motions. Accordingly, the Court finds that the Defendant has satisfactorily explained these transfers for purposes of § 727(a)(5).

20. However, the Court finds that a genuine issue of fact remains regarding the loss of the Defendant's retirement assets which the Defendant admits he cashed out approximately seven to nine months before filing the current bankruptcy case.

21. The Defendant admits that he cashed out his 401(k) when his contract ended with his previous employer, BCF Solutions, in October of 2014, and his pension with Boeing in December of 2014 and used the retirement funds to pay legal fees incurred defending the various collections actions filed by the Plaintiff over the past three years. *See* ECF 16, Exhibit A - Affidavit of Lawrence Biletski. The Defendant did not submit any documentation in support of this allegation. The Court further takes notice that the Defendant listed substantial legal fees as debts still owing on Schedule F.

22. The Defendant asserts pursuant to ALA. CODE § 19-3B-508(a) and 11 U.S.C. § 522(b)(3)(C) that the retirement accounts are exempt property and not subject to the claims of creditors. Alabama Code § 19-3B-508(a) broadly provides that "[a]ny benefits provided under a plan which includes a trust that constitutes a 'qualified trust' may not be assigned or alienated, voluntarily or involuntarily, and shall be

exempt from the operation of any bankruptcy or insolvency laws under 11 U.S.C. § 522(b)[.]" *See* <u>Sibille v. T.K. Davis</u>, 2016 WL 1178662 (M.D. Ala. 2016)(finding defendant's IRA did not count as an "asset" for calculating insolvency under AUFTA because it was exempt under ALA. CODE § 19-3B-508). As a result, the Defendant asserts that the loss or deficiency of retirement funds did not make the assets no longer available "to meet the debtor's liabilities" for purposes of § 727(a)(5).

23. Although the Defendant's retirement funds would have been exempt under ALA. CODE § 19-3B-508(a) had the funds remained in a qualified retirement plan, the funds lost their exempt status when the Defendant cashed out the funds. *See* <u>Carter Engineering Co., Inc. v. Carter (In re Carter)</u>, 236 B.R. 173, 179 (E.D. Pa. 1999)(finding that the status of the debtor's IRA changed when he gained control over the funds and there were no restrictions on his ability to use the funds).

24. In <u>Jones v. Jones (In re Jones)</u>, 545 B.R. 769 (Bankr. M.D. Fla. 2016), the bankruptcy court held that pension funds cashed out by a debtor two weeks prepetition no longer retained their exempt status where the debtor voluntarily withdrew the funds and never placed the funds into another IRA or similar retirement fund. The bankruptcy court further examined the applicable Florida exemption statute and found that the statute only exempted funds that were payable and owing to the beneficiary of the plan, but not funds that had already been distributed or received by the beneficiary.

25. "A direct transfer of retirement funds between tax exempt accounts does not affect their exempt status." <u>In re Maxwell</u>, 2009 WL 3381185 (Bankr. M.D. Fla. 2009)(citing 11 U.S.C. § 522(b)(3)(C) and Fla. Stat. Section 222.21(2)(c)).

26. In Alabama, legislation is currently pending in the Alabama Senate, Bill No. 337 introduced on March 8, 2016, to amend ALA. CODE § 19-3B-508, which provides that the protections afforded to benefits involving a qualified trust "shall apply to any amounts of money or other assets distributed from a qualified trust if such distribution constitutes a qualified rollover contribution." The proposed protection to be afforded to such distributions would be for a period of 60 days after the date of distribution to effectuate the rollover. This Bill remains pending and is not current law in Alabama. Regardless, the Defendant in this case apparently did not rollover the distributions from his retirement accounts to another tax exempt account. Instead, the Defendant

Case 15-80078-CRJ    Doc 30    Filed 04/04/16    Entered 04/04/16 14:25:30    Desc Main
Document      Page 12 of 13

asserts that he cashed out the accounts and used the funds to pay legal fees incurred defending the collection actions filed by the Plaintiff. The Defendant has not provided sufficient, satisfactory documentation to support his allegations on Summary Judgment.

27. Accordingly, the Court finds that an issue of fact exists and a trial must be held regarding the disposition of the non-exempt former retirement funds so the Court may determine if the Defendant can satisfactorily explain the loss of these assets.

A separate Order will be entered in conformity with these Findings of Fact and Conclusions of Law granting partial Summary Judgment in favor of the Defendant, and denying the Plaintiff's Motion for Summary Judgment.

Dated this the 4th day of April 2016.

BY THE COURT:

/S/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge